******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

THE STRAND/BRC GROUP, LLC, ET AL. *v.*
BOARD OF REPRESENTATIVES OF
THE CITY OF STAMFORD
(SC 20578)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.*

*Syllabus*

Pursuant to the Stamford Charter (§ C6-30-7), "[i]f [20] percent or more of
the owners of the privately-owned land in the area included in any
proposed amendment to the Master Plan, or the owners of [20] percent
or more of the privately-owned land located within [500] feet of the
borders of such area, file a signed petition with the Planning Board . . .
objecting to the proposed amendment, then said decision shall have no
force or effect but the matter shall be referred by the Planning Board
to the Board of Representatives . . . . The Board of Representatives
shall approve or reject such proposed amendment at or before its second
regularly-scheduled meeting following such referral."

The plaintiffs, owners of certain real property in the city of Stamford,
appealed to the trial court from the decision of the defendant board of
representatives, which had rejected the decision of the city's planning
board to approve the plaintiffs' application to amend the city's master
plan. In their application filed with the planning board, the plaintiffs
sought an amendment to the master plan in order to modify the land
use categories of their properties, which previously had been the site
of a recycling center, to allow for high density residential development.
The planning board then submitted its own application, seeking to mod-
ify the land use categories of adjacent properties to allow for similar
development. The planning board conducted separate hearings on the
two applications and approved the amendments proposed therein by
separate motions, reclassifying the relevant properties to allow for high
density, multifamily residential development. Thereafter, an individual
affiliated with a local neighborhood organization filed a single protest
petition, signed by owners of property adjacent to the plaintiffs' proper-
ties, with the planning board pursuant to § C6-30-7, challenging the two
amendments to the master plan approved by the planning board. The
planning board referred the protest petition to the board of representa-
tives pursuant to § C6-30-7, and a legislative officer for the board of
representatives determined that the petition was valid as to the amend-
ment pertaining to the adjacent properties because it met the signature
requirement set forth in § C6-30-7 but that it was invalid as to the
amendment pertaining to the plaintiffs' properties because it did not
meet the signature requirements for the subject area. Nonetheless, the
board of representatives subsequently voted to verify the validity of the
protest petition. The board of representatives then voted on the merits
of the protest petition and rejected the planning board's approval of
the amendments to the master plan pertaining both to the plaintiffs'
properties and the adjacent properties. On appeal from the decision of
the board of representatives, the trial court concluded that the board
of representatives did not have the authority to determine the validity
of the protest petition because, once the petition was filed with the
planning board, the charter charged the board of representatives only
with determining the substantive issue of whether the proposed amend-
ments should be approved or rejected. The court rendered judgment
sustaining the plaintiffs' administrative appeal, from which the board
of representatives appealed. *Held*:

1. The trial court correctly concluded that the board of representatives
lacked authority to assess the validity of a protest petition that had
been referred to it by the planning board: although the charter allows
opponents of an amendment to the master plan to challenge the proposed
amendment by filing a valid protest petition with the planning board,
once the protest petition is referred to the board of representatives, the
language of § C6-30-7 of the charter authorizes the board of representa-
tives only to "approve or reject [the] proposed amendment" and not

the protest petition itself, which is merely the procedural vehicle to put the amendment before the board of representatives for review; moreover, the charter provisions require the planning board to verify the procedural validity of a protest petition before referring that petition to the board of representatives; accordingly, the board of representatives acted outside of the powers granted to it by the charter and overstepped its authority by purporting to verify the validity of the protest petition referred to it by the planning board, and its vote on the validity of the protest petition was improper.

2. The board of representatives could not prevail on its claim that, even if it did not have authority to decide the validity of the protest petition, it nonetheless properly exercised its authority under the charter to decide the merits of the plaintiffs' application by rejecting the planning board's amendment to the city's master plan under the plaintiffs' application, and, accordingly, the trial court properly sustained the plaintiffs' appeal: under § C6-30-7 of the charter, a protest petition is valid and subject to referral by the planning board only if it is timely filed and signed by either 20 percent or more of the owners of the privately owned land in the area that is the subject of the proposed amendment to the master plan or signed by the owners of 20 percent or more of the privately owned land located within 500 feet of the borders of such area, and, because a valid protest petition is a condition precedent to the authority of the board of representatives to vote on the merits of an amendment, that board's vote on the merits of an amendment contained in an invalid petition is void; moreover, the signature requirements in § C6-30-7 are not a mere formality but serve an important substantive purpose, namely, limiting the authority conferred on the board of representatives by ensuring that review of an amendment to the master plan by that board is triggered only if there is a sufficient number of owners of private property within a defined geographical area with interests directly affected by the proposed amendment, and, because those requirements were intended to be mandatory rather than directory, the board of representatives did not have discretion to act on the proposed amendment notwithstanding the legal invalidity of the protest petition; furthermore, this court previously had held that the signatures in a single protest petition challenging two distinct amendments cannot be aggregated to meet the threshold signature requirements set forth in § C6-30-7, and, in the present case, it was undisputed that, insofar as the protest petition challenged the amendment approved in the plaintiffs' application, the petition did not contain the threshold number of signatures required to permit the planning board to refer the petition to the board of representatives.

(<em>One justice dissenting</em>)

Argued September 10, 2021—officially released March 15, 2022

<em>Procedural History</em>

Appeal from the decision of the defendant rejecting a decision by the Planning Board of the City of Stamford to amend the city's master plan to permit certain residential development, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the judicial district of Hartford, Land Use Litigation Docket, where the case was tried to the court, *Hon. Marshall K. Berger, Jr.*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment sustaining the appeal, from which the defendant, on the granting of certification, appealed. *Affirmed.*

*Patricia C. Sullivan*, for the appellant (defendant).

*David T. Martin*, for the appellees (plaintiffs).

*Opinion*

ECKER, J. The dispositive issue in this appeal is whether the defendant, the Board of Representatives of the City of Stamford (board of representatives), had the authority to approve a protest petition that objected to master plan amendments approved by the Planning Board of the City of Stamford (planning board). The plaintiffs, The Strand/BRC Group, LLC, 5-9 Woodland, LLC, Woodland Pacific, LLC, and Walter Wheeler Drive SPE, LLC, filed an application with the planning board to amend the master plan of the city of Stamford (city). Shortly afterward, the planning board filed its own application to amend the city's master plan. After the planning board approved both applications with some modifications, local property owners filed a protest petition under § C6-30-7 of the Stamford Charter (charter). The board of representatives determined that the protest petition was valid and rejected the planning board's approval of the amendments. The plaintiffs appealed from the decision of the board of representatives to the trial court, which sustained the plaintiffs' appeal. We affirm the judgment of the trial court.

The underlying facts are undisputed. The plaintiffs own parcels of real property in the city located at 707 Pacific Street; 5, 9, 17, 21, 23, 25, 29, 39 and 41 Woodland Avenue; and 796 Atlantic Street. In October, 2018, the plaintiffs proposed an amendment to the city's master plan to modify their properties' land use categories (Application MP-432) to allow high density residential development on the site, which previously had been used as a recycling collection and disposal center. Specifically, the plaintiffs sought to modify their properties' land use categories from category 4 (residential—medium density multifamily), category 6 (commercial—neighborhood), and category 9 (urban mixed-use), to category 5 (residential—high density multifamily) and category 9, which would allow for more dense development. The planning board thereafter submitted its own application to modify the land use categories of adjacent properties from categories 4 and 6 to category 9 (Application MP-433).[1] The proposals contained in the respective applications, though plainly related, were two different amendments contained in two different applications from two different applicants. Application MP-432 was filed separately from Application MP-433 and advertised to the public independently. The planning board conducted public hearings on both applications, after which it approved them by separate motions insofar as they each sought a change to land use category 5.[2] The planning board published separate legal notices of the approval of each amendment.

Shortly thereafter, Susan Halpern, vice president of the South End Neighborhood Revitalization Zone Initiative, filed a single protest petition signed by adjacent property owners, challenging the planning board's

approval of Applications MP-432 and MP-433 pursuant to § C6-30-7 of the charter, which provides in relevant part that, "[i]f twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan, or the owners of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area, file a signed petition with the Planning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment, then said decision shall have no force or effect but the matter shall be referred by the Planning Board to the Board of Representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral. . . ." Pursuant to § C6-30-21 of the charter, the decision must be made by an "affirmative vote of a majority of the entire membership of said Board . . . ." See generally *Benenson* v. *Board of Representatives*, 223 Conn. 777, 781, 612 A.2d 50 (1992) (describing protest petition process).

Pursuant to § C6-30-7, the planning board referred the protest petition to the forty member board of representatives on the same day it was received. The legislative officer, Valerie T. Rosenson, for the board of representatives reviewed the validity of the protest petition and determined that it was valid as to Application MP-433 because it had been signed by 33 percent of the property owners in the subject area relevant to Application MP-433 but invalid as to Application MP-432 because it had not been signed by 20 percent of the property owners in the 500 foot border of the area or 20 percent of the property owners in the subject area relevant to Application MP-432.[3]

Approximately ten days later, the city's special counsel, James Minor, submitted a memorandum, recommending that the board of representatives separately address each of the two applications referenced in the protest petition because the applications "involved separate applicants, application numbers, property boundaries, amendments, legal notices and decisions." Additionally, Attorney Minor pointed out that, pursuant to *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 572 A.2d 951 (1990), and *Hanover Hall* v. *Planning Board*, 2 Conn. App. 49, 475 A.2d 1114, cert. granted, 194 Conn. 805, 482 A.2d 710 (1984) (appeal dismissed March 5, 1985), the board of representatives must determine if it has authority to consider the protest petition by ascertaining whether it contains a sufficient number of signatures on the basis of "the area where the specific amendment is located," as opposed to the area that may be affected by the change.

The issue concerning the validity of the protest peti-

tion was referred to the board of representative's land use-urban redevelopment committee (committee), which voted unanimously to reject the protest petition with respect to Application MP-432 and to accept the protest petition with respect to Application MP-433. Following a public hearing, at which various property owners expressed their disapproval of both amendments, the board of representatives voted to send Application MP-432 back to the committee for reconsideration. The committee reconsidered its decision to reject Application MP-432 and ultimately approved the protest petition as it applied to Application MP-432. On the same day, the board of representatives convened a special meeting to determine the validity of the protest petition, at which it voted to verify its validity by a vote of seventeen to twelve. The board of representatives later voted on the merits of the protest petition and rejected the planning board's approval of Application MP-432 by a vote of twenty-one to eleven and Application MP-433 by a vote of twenty-three to twelve.

The plaintiffs appealed to the trial court from the rejection of Application MP-432 by the board of representatives.[4] The plaintiffs challenged the authority of the board of representatives to review the planning board's decision on numerous grounds, and the parties agreed to address that issue as a threshold matter before reaching the merits. Pursuant to *Benenson* v. *Board of Representatives*, supra, 223 Conn. 777, the trial court determined that "the board [of representatives] had no authority to determine the validity of the petition and [that] its action was improper" because, "[o]nce the petition was filed with the planning board, the only charge for the board [of representatives] was to determine the substantive issue, i.e., the proposed amendments." The court then determined that, even if the board of representatives had the authority to vote on the validity of the protest petition, "[t]he vote was not sufficient [because] it failed to garner a majority of the entire forty person board or twenty-one votes."[5] See Stamford Charter § C6-30-21 (requiring majority vote of entire board of representatives "in deciding all matters"). Accordingly, the trial court sustained the plaintiffs' appeal. This appeal followed.[6]

On appeal, the board of representatives claims that, regardless of whether it lacked authority to decide the validity of the protest petition, it nonetheless had authority to rule on the merits of Application MP-432, which was duly rejected by a majority of that board, i.e., twenty-one members. The plaintiffs respond that the board of representatives lacked authority to rule on the merits of Application MP-432 because the charter does not authorize that board to vote on the validity of a protest petition, and, in the absence of a valid petition, the board of representatives lacked the authority to reach the merits of the application. Relatedly, the plaintiffs argue that the protest petition was invalid because

it lacked the requisite number of signatures to trigger referral by the planning board under the charter and, accordingly, that there was "no procedural vehicle to put the amendment before the board [of representatives] for review." Alternatively, if the board of representatives had the authority to vote on the validity of the protest petition, the plaintiffs contend that its approval of the protest petition by a vote of seventeen to twelve was invalid because the petition required an affirmative vote of twenty-one board members.

The board of representatives, in considering the proposed amendment, was "called [on] to perform a legislative function." (Internal quotation marks omitted.) *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783; accord *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 421–22; *Burke* v. *Board of Representatives*, 148 Conn. 33, 39, 166 A.2d 849 (1961). Because the board of representatives was acting in a legislative capacity, the decision of the board "must not be disturbed by the courts unless the party aggrieved by that decision establishes that the [board] acted arbitrarily or illegally." (Internal quotation marks omitted.) *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 543, 600 A.2d 757 (1991); see *Campion* v. *Board of Aldermen*, 278 Conn. 500, 527, 899 A.2d 542 (2006) ("[c]ourts will not interfere with . . . local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion" (internal quotation marks omitted)). If the board of representatives exceeded the scope of its permissible authority to act under the charter, then its decision was contrary to law and an abuse of discretion. See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 422 n.7.[7]

"[A city] charter . . . constitutes the organic law of the municipality." (Citation omitted.) *West Hartford Taxpayers Assn., Inc.* v. *Streeter*, 190 Conn. 736, 742, 462 A.2d 379 (1983). "[A] city's charter is the fountainhead of municipal powers . . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . Agents of a city, including [the board of representatives], have no source of authority beyond the charter." (Citations omitted; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 423. "[T]heir powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language." (Internal quotation marks omitted.) *Perretta* v. *New Britain*, 185 Conn. 88, 92–93, 440 A.2d 823 (1981); see *Thomson* v. *New Haven*, 100 Conn. 604, 606, 124 A. 247 (1924) ("[m]unicipal corporations created by charter derive all their powers from the charter under which they act").

The proper construction of the charter presents a question of law, over which our review is plenary. E.g., *Kiewlen* v. *Meriden*, 317 Conn. 139, 149, 115 A.3d 1095 (2015). "In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws." (Internal quotation marks omitted.) *Fennell* v. *Hartford*, 238 Conn. 809, 826, 681 A.2d 934 (1996); see General Statutes § 1-2z.

I

We first address whether, pursuant to the charter, the board of representatives has the authority to assess the validity of a protest petition that has been referred by the planning board. "[I]n interpreting [charter] language . . . we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the [charter provisions]." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 527, 93 A.3d 1142 (2014). In *Benenson* v. *Board of Representatives*, supra, 223 Conn. 777, this court addressed the board of representatives' authority to review a protest petition under a former provision, § C-552.2,[8] of the charter. Section C-552.2 provided in relevant part that, if a valid petition is filed "with the zoning board . . . objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the zoning board to the board of representatives . . . together with written findings, recommendations and reasons. The board of representatives shall approve or reject such proposed amendment at or before its second regularly scheduled meeting following such referral." (Internal quotation marks omitted.) Id., 780 n.3. On the basis of the plain language of § C-552.2, we concluded that "[t]he question before the board [of representatives] was not the petition, which indicated the property owners' objection to the zone change, but whether the zone change should be approved. The petition was merely the vehicle that brought the issue before [said] board. This is made clear in § C-552.2, which provides that after the petition is referred to the board [of representatives, it] shall approve or reject such proposed amendment . . . . *The charter does not provide for the approval or rejection of the petition itself.*" (Emphasis altered; internal quotation marks omitted.) Id., 783; see *Burke* v. *Board of Representatives*, supra, 148 Conn. 39 ("The manifest legislative intent expressed in the . . . charter is that the board of representatives, in considering an amendment to the zoning map, shall review the legislative action of the zoning board on [its] written findings,

recommendations and reasons. The question before the board of representatives is whether to approve or to reject the amendment.").

The relevant charter provision at issue in this appeal is essentially the same as the charter provision that we interpreted in *Benenson*. Both § C-552.2 and § C6-30-7 allow opponents of an amendment to the zoning plan or the master plan of the city, respectively, to challenge the proposed amendment by filing a valid protest petition with the zoning board or the planning board, as the case may be. Once the protest petition has been referred to the board of representatives, the language of § C6-30-7, like the language of § C-552.2, authorizes only that the board of representatives approve or reject the *amendment, not "the 'petition' itself.*" (Emphasis added.) *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783; see Stamford Charter § C6-30-7 ("[The protest petition] shall be referred by the Planning Board to the Board of Representatives within twenty days after . . . official publication, together with written findings, recommendations and reasons. The Board of Representatives shall approve or reject such proposed amendment at or before its second regularly-scheduled meeting following such referral."). Thus, the board of representatives lacks the authority to assess the validity of a protest petition after it has been duly referred by the planning board.

As the trial court pointed out, "this leaves the question of who had authority to determine the validity of the petition . . . ." Our review of the charter leads us to conclude that its provisions require the planning board to verify the procedural validity of a protest petition *before* it refers the petition to the board of representatives. Section C6-30-7 provides that the planning board "shall" refer a protest petition to the board of representatives only if two requirements are met: (1) the petition is signed by the requisite number of property owners in the subject area, and (2) the petition is filed with the planning board within ten days after the official publication of the planning board's decision.[9] Once a protest petition has been referred, the authority of the board of representatives is limited to either "approv[-ing] or reject[ing]" the proposed amendment. Stamford Charter § C6-30-7. Thus, the board of representatives overstepped its authority by purporting to verify the validity of the protest petition.

It is well established that municipal authorities are "confined to the circumference of those [powers] granted and may not travel beyond the scope of [the] charter or in excess of the granted authority." (Internal quotation marks omitted.) *Highgate Condominium Assn.* v. *Watertown Fire District*, 210 Conn. 6, 16–17, 553 A.2d 1126 (1989). "[When] the town charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure

must be followed for the act to be lawful . . . ." *Miller* v. *Eighth Utilities District*, 179 Conn. 589, 594, 427 A.2d 425 (1980); see *Burke* v. *Board of Representatives*, supra, 148 Conn. 42 ("[when] the charter of a municipality provides that action of the legislative body shall be by ordinance or resolution, it must act in the manner prescribed"); *Food, Beverage & Express Drivers Local Union No. 145* v. *Shelton*, 147 Conn. 401, 405, 161 A.2d 587 (1960) (charter is city's enabling act, and, "[when] the charter points out a particular way in which any act is to be done, the prescribed form must be pursued for the act to be lawful"). Because the board of representatives was acting outside of the powers granted by the charter, we conclude that its vote on the validity of the protest petition was improper.[10]

II

The board of representatives contends that, regardless of whether it had the authority to decide the validity of the protest petition, it plainly had the authority to decide the merits of Application MP-432, which is exactly what it did when a majority voted to reject the planning board's amendment to the city's master plan under Application MP-432. It argues that its vote on the validity of the protest petition was at worst "a nullity" that must be "ignored" and, therefore, that the trial court improperly failed to address the substantive issue of whether the board of representatives properly rejected Application MP-432 on the merits. The claim, in essence, is "no harm, no foul"—the board of representatives had authority under the charter to approve the protest petition, and it did so by majority vote.

This argument might well be persuasive *if* the protest petition at issue, as it relates to Application MP-432, had been a legally valid petition pursuant to the charter. But, for reasons we discuss next, the petition protesting the amendment approved under Application MP-432 was invalid as a matter of law, and the board of representatives' approval of that invalid petition cannot be sustained as a result.

Section C6-30-7 of the charter authorizes the planning board to refer a protest petition to the board of representatives only if it is timely filed and signed by (1) "twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan," or (2) "the owners of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area . . . ." The planning board has twenty days to refer the protest petition to the board of representatives, which then must either "approve or reject such proposed amendment . . . ." Stamford Charter § C6-30-7; see *Benenson* v. *Board of Representatives*, supra, 223 Conn. 783. The failure of the board of representatives to timely approve or reject the proposed amendment is "deemed as approval of the Planning

Board's decision." Stamford Charter § C6-30-7.

The signature requirement set forth in the charter serves an obvious and important purpose. The board of representatives cannot exercise its authority to accept or reject a proposed amendment to the master plan at will. See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 424 (noting that petition requirements of analogous charter provision governing protest petition for zoning map amendments determines "authority of the board of representatives" to accept or reject proposed change). Instead, § C6-30-7 confers a limited authority on the board of representatives, which may be exercised *only* if a sufficient percentage of the owners of private property within a defined geographical area—an area in or proximate to the affected area—sign and timely file a protest petition with the planning board.[11] See id., 413. The language of the charter seeks "to provide *affected* landowners a right to appeal a proposed [amendment]" by requesting reconsideration by the board of representatives after a threshold requirement has been met. (Emphasis added.) Id., 432; see *Steiner, Inc.* v. *Town Plan & Zoning Commission*, 149 Conn. 74, 76, 175 A.2d 559 (1961) (protest petitions are designed "to afford protection to [nearby] property owners against changes to which they object"); *Warren* v. *Borawski*, 130 Conn. 676, 681, 37 A.2d 364 (1944) (observing that "[t]he purpose of [a New Britain ordinance permitting the town council to vote on a proposed zoning amendment] *if a protest is filed by owners of 20* [*percent*] *of the property affected* is to give some protection *to those owners* against changes to which they object" (emphasis added)). The signature requirement is not a mere formality but a substantive provision of the charter intended to ensure that review by the board of representatives is triggered if, and only if, there is a sufficient number of owners of private land with interests directly affected by the proposed amendment. See *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 426 (construing analogous charter provision governing protest petitions for zoning amendments to prevent improper procedures from frustrating purpose of provision to serve interests of owners of private land most affected by amendments).[12]

To give § C6-30-7 its intended and obvious meaning, it is clear that a protest petition is valid and subject to referral by the planning board only if it contains the required number of signatures. See id., 413 (explaining that sufficient signatures are needed for board of representatives to reconsider amendment);[13] *Burke* v. *Board of Representatives*, supra, 148 Conn. 35 (explaining that referral is made "[i]n th[e] event" that protest petition meets signature requirements); see also *Blaker* v. *Planning & Zoning Commission*, 219 Conn. 139, 148, 592 A.2d 155 (1991) ("[a] protest petition is not presumptively valid").[14] In the absence of the required number

of signatures, a protest petition cannot properly be referred to the board of representatives, and, therefore, that board cannot properly reach the merits of the amendment challenged by the protest petition. See *Woldan* v. *Stamford*, 22 Conn. Supp. 164, 167, 164 A.2d 306 (1960) (concluding that "the petition did not contain the signatures of owners of 20 [percent] of the land within 500 feet," as required by charter, and, therefore, "the matter was not properly before the board of representatives"). Because a valid protest petition is a condition precedent to the authority of the board of representatives to vote on the merits of an amendment, that board's vote on the merits of an amendment contained in an invalid petition is void.

The dissent contends that the board of representatives, as a legislative body comprised of elected officials, has discretion to act on the proposed amendment notwithstanding the legal invalidity of the protest petition. This is so, the dissent argues, because the petition requirements set forth in the charter are merely "directory" and nonsubstantive. We disagree. The board of representatives is entitled to discretion when acting in its legislative capacity, but it is not at liberty to act in contravention of charter provisions expressly limiting that authority to specified conditions. Nor are that board's legislative actions insulated from judicial review when it has exceeded its authority under the express provisions of the charter. See *Parks* v. *Planning & Zoning Commission*, 178 Conn. 657, 661, 425 A.2d 100 (1979) ("[t]he broad discretion of local [municipal] authorities acting in their legislative capacity is not . . . unlimited"); see also Stamford Charter § C2-10-1 ("The legislative power of the City shall be vested in the Board of Representatives. No enumeration of powers contained in this Charter shall be deemed to limit the legislative power of the Board *except as specifically provided in this Charter*." (Emphasis added.)).

The distinction that our case law makes between "directory" and "mandatory" provisions in statutes or charters cannot avoid or render benign the charter violation that occurred when the board of representatives acted on a proposed amendment that was not properly before it due to the legal defect in the protest petition. We have held that "[t]he test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially [when] the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Lauer* v. *Zoning Commission*, 246 Conn. 251, 262, 716 A.2d 840 (1998).[15]

"Stated another way, language is deemed to be mandatory if the mode of action is of the essence of the purpose to be accomplished by the statute . . . but will be considered directory if the failure to comply with the requirement does not compromise the purpose of the statute." (Citation omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 690, 674 A.2d 1300 (1996).

The express signature requirements in § C6-30-7 are elaborate in detail and crafted to achieve a manifestly substantive purpose. The charter specifies the precise numerical and geographical requirements that must be satisfied by the signatories before the protest petition can trigger referral of the proposed amendment to the board of representatives. These charter requirements are not imposed for "convenience and dispatch" or "to ensure the orderly review of amendments by the board of representatives," as the dissent suggests. Instead, as we previously discussed, the purpose of the signature requirement is to limit the authority of the board of representatives to reject an amendment to the master plan, once approved by the planning board, *to situations in which a protest petition is signed by a significant percentage of the persons most affected by the amendment* (i.e., 20 percent of the owners of privately owned land in the area included in the proposed amendment or located within 500 feet of the borders of such area).[16]

The dissent is correct that the detailed requirements in § C6-30-7 governing protest petitions are not accompanied by an explicit statement containing negative or prohibitory language, but negative or prohibitory language of this sort is not dispositive of our analysis, particularly when, as here, the substantive nature of the requirement is clear. See *Blake* v. *Meyer*, 145 Conn. 612, 616, 145 A.2d 584 (1958) ("[i]t is clear that the provision under consideration is mandatory, not merely directory, even in the absence of prohibitory or negative language"). The absence of negative or prohibitory language, in short, does nothing to alter our conclusion that the signature requirements in § C6-30-7 of the charter serve an important substantive purpose and were intended to be mandatory rather than directory.

This brings us to the merits of the plaintiffs' core challenge to the validity of the protest petition, namely, that the petition challenging the amendment approved in Application MP-432 is legally invalid because it lacks the requisite number of signatures.[17] The issue, properly framed, is easily resolved under our case law because it is undisputed that, insofar as the protest petition challenged Application MP-432, in particular, it did not contain the threshold number of signatures required to permit referral to the board of representatives.[18] As the trial court noted, the record indicates that the protest petition was valid and subject to referral only if the

two different amendments contained in the respective applications, Applications MP-432 and MP-433, are considered collectively instead of separately. See footnote 5 of this opinion.

Our precedent has spoken on the board of representatives' authority to simultaneously vote on multiple zoning amendments, whether contained in one or multiple applications, as challenged in a protest petition. In *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 409, we addressed whether, pursuant to a former provision of the charter, § C-552.2, the board of representatives has authority "to vote on separate zone changes [involving multiple amendments] contained in one zoning application or whether the board of representatives must act on the entire application," even though the single application contained several distinct amendments. Section C-552.2, which included essentially the same relevant text as § C6-30-7, and was the same provision at issue in *Benenson*; see footnote 8 of this opinion; provided that, "if twenty percent or more of the owners of the privately-owned land in the area included in *any proposed amendment*" or "owners of twenty percent or more of the privately-owned land located within five hundred feet of the borders of such area" timely file a signed petition objecting to the proposed amendment, the petition shall be referred to the board of representatives. (Emphasis added; internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 409 n.1; cf. Stamford Charter § C6-30-7 (requiring, among other things, signatures from "twenty (20) percent or more of the owners of the privately-owned land in the area included *in any proposed amendment*" (emphasis added)). Because the word "amendment" has been "interpreted . . . as effecting a change in existing law," we reasoned in *Stamford Ridgeway Associates* "that the [20] percent requirement in § C-552.2 is to be measured by the areas that were changed or rezoned" in connection with each individual amendment, rather than all the areas contained in the entire application. (Internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 425–26. We concluded that the board of representatives properly voted on "each separate zone change [amendment] within one application for which a valid protest petition has been filed." Id., 436.

*Stamford Ridgeway Associates* makes it clear that the relevant charter language *requires* the board of representatives considering a protest petition to treat each amendment individually instead of aggregating multiple amendments and voting on them collectively. "If we were to construe 'amendment' in § C-552.2 to mean . . . [all amendments in] the entire application . . . it would lead to bizarre and irrational results and frustrate the purpose of the charter provision" by enabling "a municipal agency to [e]nsure passage of

a highly objectionable zoning amendment by simply combining it with another large, unobjectionable amendment. A statute must not be construed in a manner that would permit its purpose to be defeated." (Internal quotation marks omitted.) Id., 426. Furthermore, "the use of the singular form of the word 'amendment' shows an intent to refer to only one amendment or one single zone change." Id., 430. In light of the plain language and purpose of the charter, we held that the board of representatives properly "vote[d] on each separate zone change encompassed in [one single] application . . . ." Id., 433.

Pursuant to *Stamford Ridgeway Associates*, the signatures on a protest petition challenging two distinct amendments, contained, respectively, in Applications MP-432 and MP-433, cannot be aggregated to meet the threshold 20 percent requirements under § C6-30-7 of the charter. Because it is undisputed that Application MP-432, standing alone, lacked sufficient signatures to warrant referral to the board of representatives under the charter, we conclude that the protest petition was invalid as to Application MP-432. Accordingly, the board of representatives lacked the authority to vote on the merits of Application MP-432, and the trial court properly sustained the plaintiffs' appeal from that board's decision.

The judgment is affirmed.

In this opinion ROBINSON, C. J., and McDONALD, MULLINS, KAHN and KELLER, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Kahn, Ecker and Keller. Although Justice Ecker was not present when the case was argued before the court, he has read the briefs and appendices, and has listened to a recording of oral argument prior to participating in this decision.

[1] The adjacent properties are located at 701 and 705 Pacific Street; 13 and 43 Woodland Avenue; 0, 784 and 804 Atlantic Street; and 12, 18 and 20 Walter Wheeler Drive.

[2] The planning board concluded that category 9 was "too intense for this area . . . ." Accordingly, "instead of . . . categor[ies] 5 and 9 for the parcels requested, the [planning] board adopted . . . category 5 for all of the parcels and rejected the request . . . [for] category 9."

[3] According to Rosenson, only 6.77 percent of the property owners in the 500 foot border area, and none of the property owners in the subject area of Application MP-432, signed the petition.

[4] Neither the plaintiffs nor the planning board appealed from the decision of the board of representatives rejecting Application MP-433. Therefore, that board's decision on Application MP-433 was not before the trial court and is not at issue in the present appeal.

[5] Accordingly, the trial court determined that it was "unnecessary . . . to reach the issue of whether the protest petition, as applied to the plaintiffs' application, was invalid because it did not have the required signatures." Nonetheless, the trial court observed that "the record clearly indicates that . . . the board [of representatives] ignored the advice of its able counsel . . . and improperly counted the signatures [on] the protest petition and applied them to the plaintiffs' and the planning board's applications in combination instead of to each application separately." (Citations omitted.)

[6] The board of representatives appealed from the judgment of the trial court to the Appellate Court, which granted that board's petition for certification to appeal pursuant to General Statute § 8-8 (o). We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[7] The dissent contends that we do "not engage with or follow [the] reasoning" of the case law governing judicial review of legislative action, citing *LaTorre* v. *Hartford*, 167 Conn. 1, 355 A.2d 101 (1974), and *Mills* v. *Town Plan & Zoning Commission*, 145 Conn. 237, 140 A.2d 871 (1958), overruled in part on other grounds by *Mott's Realty Corp.* v. *Town Plan & Zoning Commission*, 152 Conn. 535, 209 A.2d 179 (1965). Neither *LaTorre* nor *Mills* required this court to examine the scope of a municipal body's authority to act under an applicable charter provision. The pertinent cases, cited in the body of this opinion, establish that (1) the proper inquiry in the present context is whether the board of representatives acted arbitrarily or illegally, and (2) under that standard, an action of the board of representatives is "illegal" if undertaken in violation of the requirements of the municipal charter.

[8] "Section C-552.2 of the . . . charter provide[d]: 'After the effective date of the master plan, if the owners of twenty per cent or more of the privately-owned land in the area included in any proposed amendment to the zoning map, or if the owners of twenty per cent or more of the privately-owned land located within five hundred feet of the borders of such area, file a signed petition with the zoning board, within ten days after the official publication of the decision thereon, objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the zoning board to the board of representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The board of representatives shall approve or reject such proposed amendment at or before its second regularly scheduled meeting following such referral. When acting upon such matters the board of representatives shall be guided by the same standards as are prescribed for the zoning board in section 550 of this act. The failure of the board of representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the zoning board's decision.' " *Benenson* v. *Board of Representatives*, supra, 223 Conn. 780 n.3.

[9] Because the planning board referred the protest petition to the board of representatives, we need not address the rules and procedures that would govern any appeal from the planning board's refusal to refer a protest petition to the board of representatives.

[10] In light of our conclusion, we need not address whether the board of representatives' approval of the validity of the petition by a vote of seventeen to twelve was an "affirmative vote of a majority of the entire membership of [that] [b]oard" under § C6-30-21 of the charter.

[11] The dissent criticizes our reliance on *Stamford Ridgeway Associates*, contending that "[i]t was not this court that said that [sufficient signatures in a protest petition are required to trigger review by the board of representatives]. Rather, that came from an opinion by Attorney Robert A. Fuller . . . . " Footnote 6 of the dissenting opinion. The dissent ignores that we expressly *relied* on Fuller's analysis to reach our conclusion that the "charter permits the board of representatives to vote on separate zone changes contained in one zoning application" if there are sufficient signatures with respect to each separate zone. *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 409. We quoted Fuller at length and stated that "we agree with the parties that Fuller's analysis . . . presents the most reasonable and rational interpretation" of the charter and "strikes a balance between the common good and public interest in zoning, and the legitimate private interest of property owners adversely affected by a proposed change." (Internal quotation marks omitted.) Id., 436–37. In light of this explicit adoption of Fuller's analysis, we reject the dissent's suggestion that we have misinterpreted *Stamford Ridgeway Associates*.

[12] The dissent observes, and we agree, that an amendment to the master plan may affect "the interests of innumerable Stamford residents on issues of economics, environment, and population density, to name but a few." Footnote 5 of the dissenting opinion. But this court does not get to determine which Stamford residents are sufficiently affected by a proposed amendment to be eligible to sign the protest petition that would authorize the board of representatives to accept or reject the amendment. The *charter* makes that determination, and the relevant charter provision very clearly does not provide all Stamford residents with a right to protest the decision of the planning board to the board of representatives. Under the plain language of § C6-30-7, that right is limited to a specific percentage of owners of privately owned land within a defined geographic proximity of the "the area included in any proposed amendment" or "within five hundred (500) feet of the borders of such area . . . ."

[13] The dissent contends that "*Stamford Ridgeway Associates* makes clear that the signature provision is not an aggrievement, condition precedent, or limitation provision. Rather, it protects affected landowners nearby by empowering them to obtain greater review by the board of representatives, not less," and that "[i]t cannot, therefore, be said that the signature provision is a matter of substance or that the full legislative scheme evinces an intent to impose a mandatory requirement." (Footnote omitted.) The basis for this contention eludes us. *Stamford Ridgeway Associates* involved valid protest petitions signed by the requisite number of "owners of property . . . who were adversely affected by the proposed rezoning." *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 410. The problem was that multiple zone changes had been combined into a single zoning application, and, even though the protest petitions were valid as to each individual zone change, they were invalid as to the application as a whole. The issue on appeal was whether the signature requirement pertained to each individual zone change or to the whole application. See id., 409. To resolve that issue, we analyzed the purpose of the signature requirement and the function that it was intended to serve. We concluded that the signature provision serves an important substantive purpose and that construing it in such a manner as to apply to the application as a whole "would, as a practical matter . . . completely [frustrate]" that purpose. Id., 426. We relied on the opinion rendered by the board's independent counsel, Attorney Robert A. Fuller, to conclude that, "[i]f a large percentage of the area included in the application was not proposed for a zone change (for example, the entire city of Stamford) . . . it would be impossible to obtain enough signatures to meet the [20] percent requirement within the ten day limitation [period] set by the charter to petition the board. Moreover, the property owners who were not affected by any of the zone changes or amendments or those who are comfortable with their zone change will be very reluctant [to sign] a petition." (Internal quotation marks omitted.) Id.; see footnote 11 of this opinion.

Inherent in our holding in *Stamford Ridgeway Associates* was our conclusion that a protest petition must contain "enough signatures to meet the [20] percent requirement" and that, if there were an insufficient number of signatures, the signatories would have no "right to appeal to the board" of representatives. (Internal quotation marks omitted.) *Stamford Ridgeway Associates* v. *Board of Representatives*, supra, 214 Conn. 426. The dissent is correct, of course, that the signature provision protects affected, nearby owners of land by "empowering them to obtain greater review by the board of representatives," but this is true only if the requisite number of those owners sign the petition. Any other reading of the charter renders those requirements meaningless.

[14] Contrary to the dissent's assertion, our holding in *Burke* does not support its thesis. In *Burke*, we addressed whether "the board of representatives act[ed] arbitrarily and illegally in failing to give notice and to provide a hearing before taking action to reject [a zoning] amendment . . . ." *Burke* v. *Board of Representatives*, supra, 148 Conn. 37. We answered that question in the negative because there were "no specific provisions for notice and hearing by the board of representatives, and we cannot write such provisions into the charter by judicial fiat." Id., 40. In contrast, in the present case, there *is* a specific provision in the charter, providing for referral to the board *if* "twenty (20) percent or more of the owners of the privately-owned land in the area included in any proposed amendment to the Master Plan, or the owners of twenty (20) percent or more of the privately-owned land located within five hundred (500) feet of the borders of such area, file a signed petition with the Planning Board within ten days after the official publication of the decision thereon, objecting to the proposed amendment . . . ." Stamford Charter § C6-30-7. We cannot erase this explicit provision from the charter by judicial fiat any more than we can write some other provision into the charter. See *Burke* v. *Board of Representatives*, supra, 40; see also *Kiewlen* v. *Meriden*, supra, 317 Conn. 151 n.11 ("we are not at liberty to ignore the plain language of" municipal charter).

[15] Our prior case law has looked at a number of factors to determine whether the provision can be deemed mandatory or directory. "These include: (1) whether the statute expressly invalidates actions that fail to comply with its requirements or, in the alternative, whether the statute by its terms imposes a different penalty; (2) whether the requirement is stated in affirmative terms, unaccompanied by negative language; (3) whether *the requirement at issue relates to a matter of substance or one of convenience*; (4) whether the legislative history, the circumstances surrounding the stat-

ute's enactment and amendment, and *the full legislative scheme evince an intent to impose a mandatory requirement*; (5) whether holding the requirement to be mandatory would result in an unjust windfall for the party seeking to enforce the duty or, in the alternative, whether holding it to be directory would deprive that party of any legal recourse; and (6) whether compliance is reasonably within the control of the party that bears the obligation, or whether the opposing party can stymie such compliance." (Emphasis added.) *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 758–59, 104 A.3d 713 (2014).

[16] In this respect, the petition requirements in § C6-30-7 stand in stark contrast to those provisions deemed directory by courts, which often involve time limitations set forth in specific statutory provisions designed to ensure order and convenience. See, e.g., *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 463, 692 A.2d 742 (1997) (requirement that assessor provide notice of assessment within thirty days of hearing is directory); *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995) (requirement that Commissioner of Revenue Services act on tax refund claim within ninety days is directory); *State* v. *Tedesco*, 175 Conn. 279, 284, 397 A.2d 1352 (1978) (requirement imposing time limitation on agency's regulations "are designed to secure order, system and dispatch, and are directory, not mandatory"); *Broadriver, Inc.* v. *Stamford*, 158 Conn. 522, 530, 265 A.2d 75 (1969) (statutory requirement that return of notice be filed within ninety days is directory), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970); *Donohue* v. *Zoning Board of Appeals*, 155 Conn. 550, 554, 235 A.2d 643 (1967) (requirement that zoning board of appeals decide appeal within sixty days after hearing is directory). See generally *Electrical Contractors, Inc.* v. *Ins. Co. of the State of Pennsylvania*, 314 Conn. 749, 761, 104 A.3d 713 (2014) (observing that, "in a number of cases, both this court and the Appellate Court have concluded that such statutory deadlines are directory [when] there is no express legislative guidance to the contrary and no indication that the legislature intended the deadline to be jurisdictional"). But see *Vartuli* v. *Sotire*, 192 Conn. 353, 359, 472 A.2d 336 (1984) (requirement to issue decision within sixty-five day limit is mandatory), overruled by *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 623 A.2d 1007; *Viking Construction Co.* v. *Town Planning Commission*, 181 Conn. 243, 246, 435 A.2d 29 (1980) (requirement that planning and zoning commission act on subdivision application within time limits is mandatory).

The dissent incorrectly relies on these cases to support the notion that the relevant charter provision is directory. These cases, however, all involve time limitations, which often (although not always) are deemed directory in nature because the deadlines imposed do not implicate "the essence of the thing to be accomplished" but, rather, are "designed to secure order, system and dispatch in the proceedings . . . ." (Internal quotation marks omitted.) *Meadowbrook Center, Inc.* v. *Buchman*, 169 Conn. App. 527, 537, 151 A.3d 404 (2016), aff'd, 328 Conn. 586, 181 A.3d 550 (2018); see, e.g., id. ("[W]e are persuaded that the thirty day time provision set forth in Practice Book § 11-21 is intended to secure order and dispatch in the timely disposition of a pending issue. Therefore, the time limitation contained in the rule is directory and not mandatory."); see also 3 S. Singer, Sutherland Statutes and Statutory Construction (8th Ed. 2020) § 57:17, pp. 101–102 ("The question about whether time provisions are mandatory or directory . . . is a bit unique, as interpretation may be informed less by a search for legislative intent alone, and more by policy and equitable considerations aimed at avoiding harsh, unfair, or absurd consequences. . . . [F]or reasons founded in justice and fairness, and to avert injury to faultless parties, courts often find that such provisions are directory merely." (Footnotes omitted.)).

The signature requirements set forth in the charter, which define by geographical proximity those owners eligible to sign the protest petition and establish the minimum percentage of signatories needed to qualify for review, are not comparable to time limitations, which are intended to ensure order, efficiency and dispatch. Indeed, the dissent has not articulated any purpose for the signature requirements that could be considered nonsubstantive in nature.

[17] During oral argument before this court, counsel for the board of representatives argued for the first time that the validity of the petition is not properly before us because the planning board is not a party to the present action and "the decision of the planning board [to refer a protest petition] would need to be appealed as any other land use appeal." It is well established that we may decline to address "newly raised argument[s]" and that "a claim

cannot be raised for the first time at oral argument." (Internal quotation marks omitted.) *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 797 n.12, 256 A.3d 655 (2021). To the extent that the board of representatives claims, for the first time on appeal, that the plaintiffs had an obligation to appeal from the decision of the planning board referring the protest petition to the board of representatives or that the planning board is an indispensable party to the present action, we deem these claims abandoned.

[18] We disagree with the dissent that we have appointed ourselves "as a municipal signature counter . . . ." The number of signatures is undisputed on appeal, and we resolve no questions of fact in our adjudication of the legal issue presented.

————————————————————